IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BETTY D. BURGE, | ) CASE NO. 1:13 CV 87 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

## Introduction

Betty D. Burge seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] The parties have consented to my jurisdiction.[2]

The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed

---

[1] ECF # 1.

[2] ECF # 15.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 14.

[7] ECF # 20 (Commissioner's brief); ECF # 18 (Burge's brief); ECF # 21 (Burge's reply brief).

supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons that follow, I conclude that the decision of the Commissioner will be affirmed in part and reversed in part and will be remanded for limited reconsideration of the residual functional capacity during the closed period.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Burge had severe impairments consisting of bipolar disorder, polysubstance dependence in remission, and temporomandibular joint disorder.[11]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Burge's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can only perform simple, routine tasks with simple, short instructions, making simple work-related decisions and having few work place changes. She cannot perform at a production rate pace. The work must involve only minimal public contact and superficial contact with coworkers and supervisors.[12]

---

[8] ECF # 20-1 (Commissioner's charts); ECF # 19-1 (Burge's charts); ECF # 21 (Burge's reply brief).

[9] ECF # 19 (Burge's fact sheet).

[10] ECF # 24.

[11] Transcript ("Tr.") at 15.

[12] *Id.* at 17.

The ALJ decided that this residual functional capacity precluded Burge from performing her past relevant work as a fast food supervisor and as a district manager.[13]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Burge could perform.[14] The ALJ, therefore, found Burge not under a disability.[15]

Burge asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. As developed during the telephonic oral argument herein, Burge's challenge goes to the ALJ's handling of medical source opinions and the evaluation of Burge's noncompliance with prescribed psychiatric medication.

## Analysis

**A.    Applicable legal standards**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is

---

[13] *Id.* at 21-22.

[14] *Id.* at 23.

[15] *Id.*

> limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[16]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[17] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[18]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[16] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[17] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### 2.     *Noncompliance with prescribed medication*

*a.     Noncompliance caused by mental impairments*

A claimant's argument that her severe mental impairment, such as schizophrenia or bipolar disorder, prevents her from compliance with directions for taking prescribed psychiatric medications presents challenges on judicial review. 20 C.F.R. § 404.1530(a) requires a claimant to follow treatment prescribed by the physician if that treatment can restore ability to work. Under 20 C.F.R. § 404.1530(b) failure to follow prescribed treatment without a good reason will result in a finding of not disabled. 20 C.F.R. § 404.1530(c) requires the ALJ to consider the claimant's mental limitations when deciding if acceptable reason exists for failing to follow prescribed treatment.

The Sixth Circuit in *White v. Commissioner of Social Security*[19] provides a useful starting point for understanding the law applicable to the interpretation of these regulations. In *White*, the administrative record contained a significant and unexplained gap in the mental health treatment of the claimant.[20] The ALJ found that after the claimant resumed mental health treatment, she was disabled for a closed period.[21] The claimant argued that this disability extended back into the period when, according to the record, she had received no treatment.[22] In that context, the Sixth Circuit observed that "ALJs must be careful not to

---

[19] *White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009).

[20] *Id.* at 283.

[21] *Id.*

[22] *Id.*

assume that a patient's failure to receive mental-health treatment evidences a tranquil state of mind. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."[23] The court cited the Eighth Circuit's decision in *Pate-Fires v. Astrue*.[24] The Sixth Circuit found that the ALJ's decision not to extend the disability period back into the time when the claimant received no treatment had the support of substantial evidence because "there is no evidence in the record explaining White's failure to seek treatment during this half year gap."[25]

*White* did not involve a claim like that made here of failure to take prescribed medication because of the symptoms of the mental disorder. The Eighth Circuit case cited by the *White* court, *Pate-Fires v. Astrue*, did. In that decision, the Eighth Circuit specifically addressed the causal link between the mental impairment and the failure to take prescribed medication.

> [F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result' of [the] impairment [itself] and, therefore, neither willful nor without justifiable excuse.
>
> * * *
>
> Courts considering whether a good reason supports a claimant's failure to comply with prescribed medication that recognize psychological and

---

[23] *Id.*

[24] *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009).

[25] *White*, 572 F.3d at 284.

emotional difficulties may deprive a claimant of the "rationality to decide whether to continue treatment or medication."[26]

In *Pate-Fires*, the court concluded that the ALJ's failure to find justifiable noncompliance reversible error because the treating psychiatrist had opined that the mental illness had caused non-compliance with recommended medication and treatment.[27]

In a later decision, the Eighth Circuit cautioned that a finding of justifiable noncompliance with prescribed medication must have a foundation in "evidence expressly linking [the claimant's] mental limitations to such repeated noncompliance."[28]

Against the backdrop provided by these authorities, two recent decisions from this District have brought the question of justifiable noncompliance with prescription medication as a consequence of the effects of a severe mental impairment into sharper focus. In *Ross v. Commissioner of Social Security*,[29] the Court discussed the Eighth Circuit authority on noncompliance by mentally ill claimants.[30] The decision acknowledged that a noncompliance with medication could be justified by mental illness but that there must be some evidence linking the mental illness to the noncompliance.[31] It declined to find justifiable

---

[26] *Pate-Fires*, 564 F.3d at 945 (citations omitted).

[27] *Id.* at 943, 946.

[28] *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

[29] *Ross v. Comm'r of Soc. Sec.*, No. 1:12-CV-543, 2013 WL 1284031 (N.D. Ohio Mar. 26, 2013).

[30] *Id.* at *13.

[31] *Id.*

noncompliance because the claimant in that case did not provide evidence linking mental illness to noncompliance.[32]

In *Smith v. Astrue*,[33] the Court acknowledged the *White* decision of the Sixth Circuit but stated that it did not construe *White* as "establishing a *per se* rule that the existence of any mental impairment(s) constitutes an acceptable reason for failure to follow prescribed treatment under 20 C.F.R. § 416.930(c)."[34]

Accordingly, to establish a severe mental impairment as an acceptable reason excusing a claimant's adherence to a medical regimen including prescription psychiatric medications, the record must contain evidence expressly linking noncompliance with the severe mental impairment. The justifiability of noncompliance is a step four determination as to which the claimant bears the burden of proof.[35]

The requisite evidence of that link will preferably appear in an opinion or assessment by a medical source. Where such evidence does not exist or is unclear, counsel for claimants should request a consultative examination or testimony by a medical expert addressed expressly to the issue of a link between the mental impairment and failure to take prescription medication. Although a referral for a consulting examination and the calling of a medical

---

[32] *Id.*

[33] *Smith v. Astrue*, 1:12-CV-831, 2012 WL 6607007 (N.D. Ohio Dec. 18, 2012).

[34] *Id.*, at *13.

[35] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

expert remain within the discretion of the ALJ,[36] a serious argument can be made under certain circumstances that refusal to obtain a further opinion constitutes reversible error given the Sixth Circuit's admonishment in *White* that "a mentally ill person's noncompliance with treatment 'can be ... a result of the mental impairment itself and, therefore, neither willful nor without justifiable excuse'...."[37] Further, a claimant may strengthen the case for a reversal by raising the denial of a request for a consulting examination or a medical expert before the Appeals Council, but the failure to raise that issue in a request for review by the Appeals Council does not constitute a waiver thereof for purposes of judicial review.[38]

*b.    Noncompliance caused by lack of funds to obtain prescribed medications*

Additionally, the lack of funds can provide a justifiable reason for noncompliance with prescribed medication.[39] As with noncompliance because of the mental impairment itself, the claimant bears the burden of proof as to this justification.[40] Nevertheless, where the ALJ fails to make a finding as to financial inability to obtain prescription medication as cause

---

[36] 20 C.F.R. §§ 416.917 and 416.927(e)(w)(iii); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *Kmetko v. Comm'r of Soc. Sec.*, No. 5:12CV783, 2013 WL 4785687, at *2 (N.D. Ohio Sept. 6, 2013).

[37] *White*, 572 F.3d at 283, citing *Pate-Fires*, 564 F.3d at 945.

[38] *Sims v. Apfel*, 530 U.S. 103, 112 (2000).

[39] *Fender v. Comm'r of Soc. Sec.*, No. 1:11cv412, 2013 WL 422508, *9 (S.D. Ohio Feb. 4, 2013).

[40] *Kraushaar v. Comm'r of Soc. Sec.*, No.1:11cv2252, 2012 WL 6953381, at *16 (N.D. Ohio Nov. 26, 2012).

for noncompliance, in the face of evidence of record about that inability, a remand may be appropriate.[41]

**B.    Substantial evidence does not support the RFC finding for the period from May 2009 to July 2010.**

This case is difficult because the transcript evidence presents Burge in two very different mental states – one on prescribed, psychiatric medication and one off. For the most part counsel acknowledged that while medicated Burge could function relatively well but without medication she did much worse.

Burge filed applications for both DIB and SSI. Her alleged onset date is May 31, 2009, and her date of application is July 24, 2009. The ALJ decided this case on September 23, 2011.

According to the evidence, Burge held a position at the Cleveland Indians ballpark as a concession manager with substantial responsibilities for two concessions stands until May of 2009.[42] She testified that she left this job after her grandfather died, causing her to suffer depression.[43]

---

[41] *Gerhart v. Comm'r of Soc. Sec.*, 5:10-CV-2649, 2012 WL 1068986, at *5 (N.D. Ohio Mar. 29, 2012).

[42] Tr. at 15, 36-37.

[43] *Id.* at 37.

When evaluated on October 28, 2009, by Mitchell Wax, Ph.D., she reported that she was not taking any medication because of lack of funds.[44] She was likewise receiving no counseling at that time.[45]

She resumed counseling through the Nord Center on May 12, 2010.[46] By July of 2010 Burge was maintaining a medication regimen through the Nord Center and was responding well.[47]

Substantial evidence supports the ALJ's finding that Burge could perform work-related activities with the limitations set out in the RFC finding for a period commencing in July of 2010 when she submitted to treatment and medication as prescribed by the Nord Center. Further, the transcript contains no evidence that her psychiatric impairment caused the noncompliance before May of 2010.[48]

Despite the evidence that she could not afford her medication and her unemployment since May of 2011, the ALJ does not discuss or make any findings of this alleged cause for noncompliance for the period between the onset and applications dates in 2009 and the report

---

[44] *Id.* at 391

[45] *Id.*

[46] *Id.* at 437-48.

[47] *Id.* at 431-32.

[48] The Nord Center records confirm that she did receive treatment through Recovery Resources and had been on prescription medication in 2007. *Id.* at 437.

of improvement with medication in July of 2010. A remand for further inquiry and findings regarding noncompliance during this period is appropriate.[49]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Burge had no disability for the period after July 1, 2010. Substantial evidence does not support such finding for the period before that date to the onset or application dates. The decision of the Commissioner is, therefore, affirmed in part and reversed in part and remanded for the limited reconsideration of the RFC during the closed period consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[50] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated: December 26, 2013               s/ William H. Baughman, Jr.
                                       United States Magistrate Judge

---

[49] Similar to Judge McHargh in the *Gerhart* decision, 2012 WL 1068986, at *5 n.4, I recognize that this remand may well result in a finding that even with diminished capability caused by noncompliance with medication Burge retained an RFC during the closed period that would support a no disability finding. The opinions of Dr. Wax and the state agency reviewing psychologist, given during that period, provide some basis for a finding. But Dr. Wax's snapshot of Burge's ability to function is a mixed evaluation that cuts both ways, which the ALJ parsed without making a finding on noncompliance, and the agency reviewer relied heavily on Dr. Wax's evaluation. This case deserves a second look at the closed period with appropriate consideration given to Burge's noncompliance with medication and the cause therefor.

[50] 28 U.S.C. § 2412(d)(1)(A).